J-S45038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYREEK JACKSON | : | |
| | : | |
| Appellant | : | No. 200 EDA 2022 |

Appeal from the Judgment of Sentence Entered December 15, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0000245-2020

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED FEBRUARY 16, 2023**

Tyreek Jackson (Appellant) appeals from the judgment of sentence imposed after the trial court found him guilty of robbery, burglary, persons not to possess firearms, conspiracy, criminal trespass, firearms not to be carried without a license, theft by unlawful taking, receiving stolen property, carrying firearms on the public streets of Philadelphia, unlawful restraint, possessing an instrument of crime, terroristic threats, simple assault, recklessly endangering another person (REAP), and false imprisonment.[1] We affirm.

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3502(a)(1)(i), 6105(a)(1), 903(c), 3503(a)(1)(ii), 6106(a)(1), 3921(a), 3925(a), 6108, 2902(a)(1), 907(a), 2706(a)(1), 2701(a), 2705, and 2903(a), respectively.

As the facts and procedural history of this case are fully set forth in the trial court's opinion, we do not restate them. *See* Trial Court Opinion, 4/28/22, at 1–9. We briefly note that, on August 16, 2018, Appellant, accompanied by Brooklyn Bradley (Bradley), and Jaquil Watson (Watson), invaded the home of 70-year-old Larry Feinberg (the Victim). N.T., 10/5/21, at 12-16, 31-33. Appellant and Watson restrained the Victim with plastic ties, pressed a gun to the Victim's head, pushed him, and sprayed mace in the Victim's eye. *Id.* at 13-16, 35-36.

On October 5, 2021, the trial court convicted Appellant of the above charges. On December 15, 2021, the trial court, with the benefit of a pre-sentence investigation report, sentenced Appellant on the charges of robbery, burglary, persons not to possess firearms, and conspiracy, to an aggregate 7 – 20 years in prison. The trial court did not sentence Appellant on the remaining charges. Appellant timely appealed.[2]

Appellant raises two issues on appeal:

[1.] Is the evidence sufficient, as a matter of law, to convict [Appellant] of the crimes of possessing a firearm without a license and carrying a firearm in Philadelphia as set forth in 18 Pa.C.S.A. §§ 6106 and 6108 of the Crimes Code where the evidence of record does not establish that the item allegedly used by [Appellant] had a barrel length or overall length which satisfied the definition of firearms as that term is defined in 18 Pa.C.S.A. § 6102?

[2.] Is the evidence sufficient, as a matter of law, to convict [Appellant] of the crimes of [REAP] and unlawful restraint as set

---

[2] Appellant and the trial court have complied with Pa.R.A.P. 1925.

forth in 18 Pa.C.S.A. §§ 2705 and 2902 of the Crimes Code where the evidence of record does not establish that [Appellant] or his accomplices placed [the Victim] at risk of suffering "serious bodily injury" as that term is defined in 18 Pa.C.S.A. § 2301?

Appellant's Brief at 4.

Our standard of review is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Leaner*, 202 A.3d 749, 768 (Pa. Super. 2019) (citation omitted).

Appellant argues his convictions under 18 Pa.C.S.A. §§ 6106 and 6108[3] were not supported by sufficient evidence because:

Both offenses require possession of a "firearm." "Firearm" is defined in § 6102 of the Crimes Code as "[a]ny pistol or revolver **with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel**

_____

[3] As noted, the trial court did not impose a sentence on these charges.

**length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches.**" 18 Pa.C.S.A. § 6102 (emphasis supplied). With respect to the "gun" allegedly possessed by [Appellant], the only description offered into evidence at trial was that the weapon was a gun that looks like a "relatively small or medium sized automatic pistol" without any description by the witness of the size of the weapon. [Bradley], who was a coconspirator in the robbery at issue, testified that the gun was fake.

Appellant's Brief at 17 (emphasis in original). Appellant further asserts the evidence was insufficient to sustain his convictions for REAP and unlawful restraint:[4]

Both crimes require that [Appellant] expose the victim to the risk of suffering serious bodily injury. The [Victim] here did not suffer an injury meeting the definition of serious bodily injury, namely "injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

*Id.* at 18.

The record belies Appellant's arguments. Upon review, we conclude that the evidence presented at trial, viewed in a light most favorable to the Commonwealth, supports the trial court's verdicts. Furthermore, the Honorable Charles A. Ehrlich, sitting as the trial court, has authored a comprehensive opinion, which we adopt in its entirety and incorporate in this decision. *See* Trial Court Opinion, 4/28/22, at 14, 17 (concluding evidence was sufficient to sustain convictions under 18 Pa.C.S.A. §§ 6106 and 6108 where the Commonwealth's evidence showed Appellant "wielded" a gun

_____

[4] Again, the trial court did not impose a sentence on these charges.

during the home invasion and had a criminal record making him ineligible to carry a firearm; the evidence was sufficient to sustain Appellant's convictions for REAP and unlawful restraint where evidence showed Appellant used plastic ties to restrain the Victim, held a gun to his head throughout the robbery, and sprayed mace in the Victim's eye, thereby exposing him to the risk of serious bodily injury).

Consistent with the foregoing, we adopt Judge Ehrlich's opinion as our own.

Judgment of sentence affirmed.


*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary


*Date: 2/16/2023*

**FILED**

APR 2 8 2022

Appeals/Post Trial
Office of Judicial Records

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | CP-51-CR-0000245-2020 |
| | : | |
| v. | : | |
| | : | SUPERIOR COURT NO: |
| Tyreek Jackson | : | 200 EDA 2022 |

## OPINION

Ehrlich, J.

Tyreek Jackson, hereinafter referred to as "Appellant," was found guilty by this Court on October 5, 2021, of fifteen (15) criminal offenses, including Robbery, Recklessly Endangering Another Person, Unlawful Restraint, and three (3) violations of the Uniform Firearms Act. Appellant was sentenced to an aggregate term of seven (7) to twenty (20) years of confinement. Appellant timely appealed the judgment of sentence, challenging the sufficiency of the evidence for two of his convictions for violations of the Uniform Firearms Act and the sufficiency of the evidence for his convictions for Recklessly Endangering Another Person and Unlawful Restraint. Appellant's challenges are without merit and, accordingly, no relief is due.

### Statement of Facts

On August 16, 2018, Appellant and two other individuals committed an armed home invasion and robbery of Larry Feinberg at his home in Philadelphia in which they restrained and assaulted Mr. Feinberg and stole more than $11,000 in cash and various other items from him.

1

Appellant was charged with fifteen (15) criminal offenses: Robbery,[1] Burglary,[2] Persons Not To Possess, Use, Manufacture, Control, Sell or Transfer Firearms,[3] Criminal Conspiracy,[4] Criminal Trespass,[5] Firearms Not To Be Carried Without A License,[6] Theft By Unlawful Taking or Disposition,[7] Receiving Stolen Property,[8] Carrying Firearms on Public Streets or Public Property in Philadelphia,[9] Unlawful Restraint,[10] Possessing Instruments of Crime,[11] Terroristic Threats,[12] Simple Assault,[13] Recklessly Endangering Another Person,[14] and False Imprisonment.[15] Appellant knowingly and intentionally waived his right to a jury trial and proceeded to a waiver trial before this Court on October 5, 2021. N.T. 10/5/2021, at 6-9.

At trial, the Commonwealth presented three witnesses as part of their case-in-chief. The Commonwealth first presented Larry Feinberg, the complainant. The Commonwealth then presented Brooklyn Bradley and Philadelphia Police Detective James Waring. The trial evidence and testimony given at trial are summarized below.

a. Larry Feinberg (Complainant)

Larry Feinberg, hereinafter referred to as "Complainant," testified as follows. On August 16, 2018, Complainant, who was seventy (70) years of age, stated that he was the victim of an

---

[1] 18 Pa.C.S.A. § 3701(a)(1)(ii).
[2] 18 Pa.C.S.A. § 3502(a)(1)(i).
[3] 18 Pa.C.S.A. § 6105(a)(1).
[4] 18 Pa.C.S.A. § 903(c).
[5] 18 Pa.C.S.A. § 3503(a)(1)(ii).
[6] 18 Pa.C.S.A. § 6106(a)(1).
[7] 18 Pa.C.S.A. § 3921(a).
[8] 18 Pa.C.S.A. § 3925(a).
[9] 18 Pa.C.S.A. § 6108.
[10] 18 Pa.C.S.A. § 2902(a)(1).
[11] 18 Pa.C.S.A. § 907(a).
[12] 18 Pa.C.S.A. § 2706(a)(1).
[13] 18 Pa.C.S.A. § 2701(a).
[14] 18 Pa.C.S.A. § 2705.
[15] 18 Pa.C.S.A. § 2903(a).

armed invasion and robbery of his home at 419 North Front Street, located in the city and county of Philadelphia. Complainant was asked if he knew someone named Brooklyn Bradley and answered that he had met her about six months prior to the home invasion. Complainant, a commercial photographer, had seen Ms. Bradley standing in front of the Dave & Buster's near his home and began talking to her because he thought she would be a good model. Complainant later began paying Ms. Bradley to help him clean his house,and eventually decided he wanted to hire her as a marketing assistant. N.T. 10/5/2021, at 11-12, 20-25.

On several occasions in the weeks leading up to August 16, 2018, Complainant dropped Ms. Bradley off at Einstein Medical Center, believing she was being seen for headaches she claimed to have been suffering from. On August 16, 2018, Ms. Bradley called Complainant and told him that she had been diagnosed with a terminal and inoperable brain tumor and asked if she could meet with Complainant that evening. After Ms. Bradley arrived at Complainant's residence, she asked if she could order a pizza. Complainant gave her permission to do so and subsequently fell asleep. Complainant later awoke around 9:30 p.m. to two men pointing guns at his head and demanding that Complainant give them his money. Complainant was placed in tight restraints which ultimately left him with bruising on his left wrist and numbness in his right hand for approximately six (6) weeks. *Id.* at 12-15, 18, 26.

The two armed assailants took $600 in cash from Complainant's jeans and then asked where the rest of his money was. Complainant initially remained silent but acquiesced after a gun was again placed against his head and one of the men began counting down from five. Complainant retrieved his glasses, then opened a safe in his home which contained $11,000 in cash and a ring that once belonged to his father. In all, the armed assailants took the cash, ring, and paperwork from the safe as well as a camera, lens, and Complainant's cell phone. Ms.

3

Bradley was present throughout the home invasion. After the two men retrieved the money out of Complainant's safe, Ms. Bradley asked the men in a conversational tone if she could leave. The two men told her yes, at which point Ms. Bradley walked away. Complainant testified that Ms. Bradley had lied to him about the brain tumor and set him up to stage this armed home invasion. *Id.* at 13-15, 26-27.

The home invasion ended when Complainant was pushed to the ground and sprayed with mace in one of his eyes. Complainant testified that the entire invasion lasted for approximately ten (10) minutes and that he called for police after the two assailants left. Although the two assailants were masked during the home invasion, Complainant was able to tell that they were of average height, thin, and likely young based on their voices. Because a part of their body wasn't covered by masks, Complainant was also able to identify that both assailants were black. Additionally, both masked assailants were carrying firearms. Complainant testified that these firearms were small to medium sized automatic pistols, which he "very comfortabl[y]" described as being real. *Id.* at 15-18.

b. Brooklyn Bradley

The second witness for the Commonwealth was Brooklyn Bradley, who testified as follows. On August 16, 2018, Ms. Bradley participated in a home invasion and robbery at 419 North Front Street, a house owned by Complainant, Larry Feinberg. Ms. Bradley testified that she had met Complainant about six months prior when she was nineteen (19) years old and that she began working for him as a cleaner. Ms. Bradley stated that she had a sexual relationship with Complainant and that he took her out for dinner, gave her money, and bought her presents. Based on her relationship with Complainant and her familiarity with his house from cleaning it, Ms. Bradley knew that Complainant had money and kept a safe in his house. *Id.* at 31-32, 51-55.

4

Ms. Bradley planned the home invasion with two other individuals: Jaquil Watson, an ex-boyfriend of Ms. Bradley's, and Tyreek Jackson, the boyfriend of Ms. Bradley's friend, Lashae Adams. Ms. Bradley identified Appellant in the courtroom as Tyreek Jackson. According to Ms. Bradley, Ms. Adams knew of the plan and introduced Appellant into the plan but did not herself actively participate in the perpetration of the home invasion. Ms. Bradley testified that the plan was to order pizza while at Complainant's house and then leave the front door unlocked after getting the pizza. Appellant and Watson were then going to enter the house, take Complainant's money, and leave. *Id.* at 32-34, 43-44.

On August 16, 2018, Ms. Bradley testified that after she falsely told Complainant that she had a brain tumor, he picked her up and brought her back to his house. Ms. Bradley ordered pizza and left the front door to the house unlocked while Complainant was in bed. Appellant and Watson entered the house and confronted Appellant by tying his hands and asking him where the money was. They were carrying what Ms. Bradley described as a "fake gun." Ms. Bradley explained that she thought the gun looked fake but had never actually handled it herself. Appellant and Watson threatened to shoot Complainant to coerce him into opening the safe in the closet. After Complainant opened the safe, he was pushed to the ground. Appellant also sprayed him with mace in one eye. Appellant and Watson took money from the safe, a ring, and Complainant's phone, and placed the items in a suitcase that Ms. Bradley had grabbed for them. Ms. Bradley then left with Appellant and Watson in a Hyundai Sonata and went to Ms. Adam's house. The following day, Ms. Bradley went to Jewelers Row in Philadelphia and sold the ring for $1000. *Id.* at 31-38.

Ms. Bradley testified that she gave a recorded statement to police detectives in which she told a series of lies to avoid implicating herself in the home invasion and robbery. Ms. Bradley

5

confirmed that she was aware that Jaquil Watson and Lashae Adams were not arrested for their involvement. She also admitted that she was arrested for her involvement and agreed to testify at Appellant's trial in exchange for a reduction in the charges brought against her. Ms. Bradley pleaded guilty to Conspiracy and Robbery, both felonies, and received a sentence of eleven-and-a-half (11½) to twenty-three (23) months of confinement, with immediate parole, credit for time served, and a subsequent two (2) years of reporting probation. As part of her plea agreement, Ms. Bradley agreed to provide complete and truthful information about the home invasion and understood that she would be sent back to jail if she lied at trial. *Id.* at 37-38, 47-48, 55-94.

c. Philadelphia Police Detective James Waring

The third and final witness called by the Commonwealth was Philadelphia Police Detective James Waring, who testified as follows. Detecting Waring became involved with Appellant's case through his work with the Special Investigations Unit. On August 17, 2018, the day after the home invasion at 419 North Front Street, Detective Waring went to the scene and spoke with both Complainant and some neighbors. Detective Waring returned to the scene on August 20, 2018 and was able to recover video footage from multiple nearby locations. A compilation of the recovered video footage was made and played for this Court. *Id.* at 98-99.

Detective Waring testified that this compilation depicted two male individuals driving in a light-colored Hyundai and parking on the north side of Callowhill Street. The individuals then exit the vehicle, begin walking west on Callowhill Street, and turn north onto Front Street. Later, three individuals can be seen in the video footage walking south on Front Street toward Callowhill Street, coming from the area of Complainant's front door. One of the individuals can be seen carrying a large white item. Another piece of footage in the compilation depicted a small black object being thrown from the driver's side of the vehicle. *Id.* at 99-104.

6

Based on the video footage and his conversation with Complainant, Detective Waring identified Brooklyn Bradley as a suspect for the home invasion and robbery. Ms. Bradley was subsequently arrested and interviewed. In this interview, Ms. Bradley identified Jaquil Watson as a participant but was unable to offer any details on the second male individual other than identifying him as the driver of a Hyundai Sonata. Ms. Bradley also told Detective Waring that after the robbery, she went to her friend Lashae Adams's house at 421 Schoolhouse Lane. Detective Waring checked that address and came back with Lashae Adams's name, as well as name and photos for Appellant, Tyreek Jackson. *Id.* at 104-106.

On October 31, 2018, Detecting Waring and his partner, Detective James Callahan, went to 421 Schoolhouse Lane to find the Hyundai Sonata seen in the video footage. They spoke to an individual named Richard Davis, the uncle of Lashae Adams and the boyfriend of Appellant's mother and received information about Appellant. Based on that information, Detective Waring and his partner returned the following day and observed Appellant standing beside the open trunk of his vehicle. Detective Waring drove over to Appellant, exited his vehicle, and made eye contact with Appellant. Detective Waring stated Appellant's name, at which point Appellant closed the trunk, ran into Apartment 8 at 421 Schoolhouse Lane, and slammed the door shut. Detective Waring secured the front door while his partner went around to the back to secure the rear. After Detective Waring knocked on the door multiple times, Lashae Adams came out and told the detectives that Appellant wasn't there. *Id.* at 106-109.

Detectives Waring and Callahan nonetheless continued to hold the apartment while they awaited a search warrant. After the warrant was granted, they searched inside and were unable to locate Appellant. Inside the apartment, Detectives Waring and Callahan recovered an empty box for a .40 caliber Glock pistol, which contained within it two spent .40 caliber shell casings and a

7

receipt for another 9mm pistol. They also secured the Hyundai Sonata and located within it a vehicle registration in Appellant's name and a Bill of Sale in Lashae Adams's name. Detective Waring stated he later received a phone call from Appellant on November 2, 2018 in which Appellant asked why police were chasing him. Detective Waring confirmed phone records originating from a phone number he had for Appellant which showed calls made to the 9th Police District, Detective Callahan, and Detective Waring. Detective Waring also testified that he found information that Appellant was residing at 1742 West Venango Street in Philadelphia, but that it was boarded up when he went there looking for Appellant. *Id.* at 109-123.

d. Stipulations

The Commonwealth and Appellant's trial counsel first stipulated that Appellant made a phone call on September 17, 2018, which was recorded and played for this Court, in which Appellant talked about a Hyundai Sonata and hiding a "jawn." The Commonwealth and Appellant's trial counsel also stipulated that Appellant had a criminal record which subjected him to the penalties of § 6105 of the Uniform Firearms Act. Finally, the Commonwealth and Appellant's trial counsel stipulated that if called to testify, Jennifer Ryan would confirm both the phone number for the establishment where she delivers pizza from and her own personal cell phone number. *Id.* at 124-125.

Procedural History

On October 5, 2021, after hearing all testimony and closing arguments from counsel, this Court found Appellant guilty of all fifteen (15) offenses. N.T. 10/5/2021, at 140. This Court ordered a presentence investigation report and a mental health evaluation, and deferred sentencing to a later date. *Id.* at 140-141. This Court subsequently held a sentencing hearing for Appellant on December 15, 2021. The Commonwealth submitted a sentencing memorandum in

8

advance of the hearing in which it only sought sentences on Appellant's convictions for felonies of the first degree. N.T. 12/15/2021, at 4-5. Appellant had a prior record score of five (5). *Id.* at 4. After applying the deadly weapon use enhancement matrix to Appellant's convictions for Robbery and Burglary, the sentencing guidelines recommended this Court impose seventy-eight (78) to ninety (90) months of confinement for each, plus or minus twelve (12) months. *Id.* at 4-5. This was the longest sentence recommended by the sentencing guidelines for any of Appellant's convictions. *See id.* at 4-5.

At the sentencing hearing, this Court heard closing arguments from the Commonwealth and Appellant's counsel, as well as statements by Complainant, two of Appellant's sisters, and Appellant himself. *Id.* at 5-23. After considering the presentence investigation report, the mental health evaluation, the Commonwealth's sentencing memorandum, the sentencing guidelines, the purposes of the Sentencing Code, the statements made at sentencing, and arguments from counsel, this Court sentenced Appellant to a concurrent seven (7) to twenty (20) years of confinement for each of Appellant's convictions for felonies of the first degree: Robbery, Burglary, Persons Not To Possess, Use, Manufacture, Control, Sell or Transfer Firearms, and Conspiracy. *Id.* at 24-30. This Court imposed no further penalties on Appellant's eleven (11) other convictions. *Id.* at 28.

On January 10, 2022, Appellant filed a timely appeal from the judgment of sentence imposed by this Court. On January 18, 2022, this Court directed Appellant to file a 1925(b) Statement of Errors Complained of on Appeal, which Appellant subsequently filed on February 7, 2022. In his 1925(b) Statement of Errors Complained of on Appeal with this Court, Appellant raises the following issues:

1. Defendant alleges that the evidence at trial was insufficient as a matter of law to sustain the conviction with respect to 18 Pa.C.S.A. §§ 6106 and 6108 of the Crimes

9

Code. Both offenses require possession of a "firearm." "Firearm" is defined in § 6102 of the Crimes Code. With respect to the "gun" allegedly possessed by defendant, only general descriptions were given by the witnesses at trial, and no witness offered even an estimation or approximation of the overall length of the gun or its barrel. In fact, one witness testified that the gun appeared to be fake. Accordingly, a determination that this "gun" fell within the relatively narrow parameters defining a "firearm" set forth in § 6102 cannot be based on the evidence received and cannot satisfy the beyond a reasonable doubt standard. Rather, it would be based upon conjecture, suspicion or surmise. Pennsylvania law requires more and, accordingly, the evidence received at trial is insufficient as a matter of law to sustain the conviction with respect to these charges.

2. Defendant alleges that the evidence at trial was insufficient as a matter of law to sustain the conviction with respect to 18 Pa.C.S.A. §§ 2705 and 2902 of the Crimes Code. Both offenses require that a defendant place the victim at risk of suffering serious bodily injury. In this case, although restrained with plastic ties and vulnerable, complainant was never at risk of suffering serious bodily injury as all defendants refrained from striking the complainant who was able to summon police immediately upon the termination of the criminal incident. Accordingly, a determination that complainant was placed at risk of suffering "serious bodily injury" as set forth in § 2301 of the Crimes Code cannot be based on the evidence received and cannot satisfy the beyond a reasonable doubt standard. Rather, it would be based upon conjecture, suspicion or surmise. Pennsylvania law requires more and, accordingly, the evidence received at trial is insufficient as a matter of law to sustain the conviction with respect to these charges.

Appellant's Pa.R.A.P. 1925(b) Statement of Matters.

Discussion

I. **This Court properly concluded that there was sufficient evidence to convict Appellant of 18 Pa.C.S.A. §§ 6106 and 6108 because circumstantial evidence established that Appellant possessed a firearm as defined in 18 Pa.C.S.A. § 6102 while ineligible to do so.**

Appellant first claims that the evidence presented at trial was insufficient as a matter of law to prove that Appellant was in possession of a firearm as defined by 18 Pa.C.S.A. § 6102. Appellant argues that his convictions for 18 Pa.C.S.A. § 6106, Firearms Not To Be Carried Without a License, and 18 Pa.C.S.A. § 6108, Carrying Firearms on Public Streets or Public Property in Philadelphia, therefore cannot be sustained. Appellant's claims are without merit and, accordingly, no relief is due.

10

In reviewing a challenge to the sufficiency of the evidence, the standard of review is to "determine whether the evidence admitted at trial and all reasonable inferences therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt." *Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018). This standard is equally applicable to cases where the evidence is circumstantial rather than direct "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Walker*, 836 A.2d 999, 1000 n.3 (Pa. Super. 2003). It is "within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." *Palmer*, 192 A.3d at 89.

The term "firearm" is defined in 18 Pa.C.S.A. § 6102 as "[a]ny pistol or revolver with a barrel less than 15 inches . . . or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches." It is well settled that the testimony of a witness that the defendant possessed firearms is sufficient to establish a violation of the Uniform Firearms Act, even if a weapon is never actually recovered. *Commonwealth v. Robinson*, 817 A.2d 1153, 1161–62 (Pa. Super. 2003); *see also Commonwealth v. Kulb*, No. 2262 EDA 2016, 2017 WL 3098608, at *3 (Pa. Super. Ct. July 21, 2017).

Appellant argues that the evidence is insufficient to sustain his conviction under 18 Pa.C.S.A. §§ 6106 and 6108 because only general descriptions of the gun were given by witnesses at trial and no witness offered an estimation or approximation of the overall length of the gun or its barrel, as is needed to meet the definition of a firearm under 18 Pa.C.S.A. § 6102. Appellant also asserts that one witness even stated that the gun appeared to be fake. This argument fails because contrary to Appellant's assertions, the testimony of Larry Feinberg,

11

Complainant, and other circumstantial evidence was sufficient to prove that Appellant was in possession of a firearm on August 16, 2018.

Complainant testified that on that date, he was the victim of an armed invasion and robbery of his home at 419 North Front Street in Philadelphia. N.T. 10/5/2021, at 11-12. During this invasion, he awoke to two men pointing guns to his head. *Id.* The testimony provided by Brooklyn Bradley, another participant in the invasion and robbery, and Philadelphia Police Detective James Waring established that Appellant was one of these two men. *See id.* at 32-34, 98-123. Although Ms. Bradley testified that Appellant and the other perpetrator were carrying what she described as a "fake gun," she admitted that she had never actually handled it herself and that she simply thought it looked fake. *Id.* at 35-36. Complainant, on the other hand, had the gun placed against head multiple times and testified that both men were carrying small to medium sized automatic pistols, which he "very comfortabl[y]" described as being real. *Id.* at 15-18.

Detective Waring recovered video footage which showed two individuals leaving from a Hyundai Sonata toward where the invasion and robbery took place, then later returning to the Sonata with another individual and large white item. *Id.* at 99-103. The footage also showed a small black object being thrown from the driver's side of the vehicle. *Id.* at 103-104. The Commonwealth and Appellant's trial counsel stipulated that Appellant made a phone call on September 17, 2018, a month after the home invasion, in which he talked about a Hyundai Sonata and hiding a "jawn." *Id.* at 124-125. On November 1, 2018, Detective Waring and his partner, Detective James Callahan, encountered Appellant standing by a Hyundai Sonata outside an apartment they had linked to his name. *Id.* at 105-108. After Appellant ran inside the apartment, Detectives Waring and Callahan acquired and executed a search warrant for the

apartment, where they recovered an empty box for a .40 caliber Glock pistol containing two

spent .40 caliber shell casings and a receipt for another 9mm pistol. *Id.* at 109-113.

Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence

thus established that Appellant was credibly identified as one of the two men who perpetrated the

invasion and robbery of Complainant's home. During this invasion, he wielded a small to

medium sized automatic pistol which Complainant, who both saw and felt the gun, confidently

testified was real. The search of the apartment revealed that Appellant had access to two guns

consistent with the description provided by Appellant. Video footage depicted a small black

object being thrown from a Hyundai Sonata, the exact type of vehicle Appellant was later seen

standing next to which was registered in his name. Appellant admitted to hiding a "jawn," which

can refer to a gun, in a recorded phone call. Accordingly, even though a firearm was not actually

recovered, the combined testimony presented at trial was sufficient to establish that the weapon

Appellant wielded during the armed invasion and robbery was a firearm within the definition of

18 Pa.C.S.A. § 6102.

A person violates 18 Pa.C.S.A. § 6106 of the Uniform Firearms Act if he "carries a

firearm concealed on or about his person . . . without a valid and lawfully issued license." A

person violates 18 Pa.C.S.A. § 6108 of the Uniform Firearms Act if he carries a "firearm, rifle or

shotgun at any time upon the public streets or upon any public property" in Philadelphia, unless

he is licensed to do so or exempt from licensing. Both statutes thus require an element of

possession, which "can be found by proving actual possession, constructive possession, or joint

constructive possession." *Commonwealth v. Heidler*, 741 A.2d 213, 215 (Pa. Super. 1999).

Constructive possession is an inference arising from a set of facts that possession of the gun was

more likely than not and may be established by the totality of the circumstances. *Commonwealth*

13

*v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (quoting *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012)).

Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to convict Appellant of both violations of the Uniform Firearms Acts. As previously discussed, circumstantial evidence provided by the testimony of the Commonwealth's witnesses established that Appellant wielded a gun meeting the definition of a firearm. These witnesses also credibly identified Appellant as one of the two perpetrators of the armed invasion and robbery which took place on August 16, 2018, at Complainant's home at 419 North Front Street, located in the city and county of Philadelphia. Furthermore, there was a stipulation by and between counsel that Appellant had a criminal record which subjected him to the penalties of § 6105 of the Uniform Firearms Act, meaning he was ineligible to have a valid license to carry a firearm. Thus, the Commonwealth satisfied all elements for both 18 Pa.C.S.A. §§ 6106 and 6108 beyond a reasonable doubt. Appellant's claim that there was insufficient evidence to convict him of these violations is without merit and no relief is due.

## II. This Court properly concluded that there was sufficient evidence to convict Appellant of Recklessly Endangering Another Person and Unlawful Restraint because he placed Complainant in restraints and placed him in danger of serious bodily injury by holding him at gunpoint and spraying him in the eye with mace.

Appellant also claims that the evidence presented at trial was insufficient as a matter of law to prove that Appellant placed Complainant at risk of suffering serious bodily injury, as defined by 18 Pa.C.S.A. § 2301. Appellant argues that his convictions for 18 Pa.C.S.A. § 2705, Recklessly Endangering Another Person, and 18 Pa.C.S.A. § 2902, Unlawful Restraint, therefore cannot be sustained. Appellant's second claim is without merit and, accordingly, no relief is due.

As previously stated, the standard of review for a challenge to the sufficiency of the evidence is to "determine whether the evidence admitted at trial and all reasonable inferences

14

therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt." *Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018). It is "within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." *Id.*

"Serious bodily injury" is defined in 18 Pa.C.S.A. § 2301 as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." A person commits the offense of Recklessly Endangering Another Person if he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. A person commits the offense of Unlawful Restraint if he knowingly "restrains another unlawfully in circumstances exposing him to risk of serious bodily injury." 18 Pa.C.S.A. § 2902(a)(1).

"[M]ere apparent ability to inflict harm is not enough" to show that someone has been exposed to the risk of serious bodily injury. *Commonwealth v. Schilling*, 431 A.2d 1088, 1092 (Pa. Super. 1981). Instead, "actual danger of harm must be shown." *Id.* Circumstances where a person holds an individual at gunpoint is considered "sufficient proof of inherently dangerous circumstances" which show that they have placed the individual "in danger of serious bodily harm." *Commonwealth v. Melvin*, 572 A.2d 773, 775 (Pa. Super. 1990); *see also Commonwealth v. Isaacs*, No. 2750 EDA 2012, 2014 WL 10846145, at *5 (Pa. Super. Ct. Aug. 27, 2014) (concluding that the defendant exposed the victim to risk of serious bodily injury when he kept a gun pointed toward her head as he forced her to perform sexual acts). Additionally, mace has been considered "an instrument which is likely to cause serious bodily injury" because if sprayed

15

directly into the eyes of another person, "there is a high probability that the victim will be seriously hurt." *Commonwealth v. Chambers*, 157 A.3d 508, 516-517 (Pa. Super. 2017) (*reversed on other grounds*, 188 A.3d 400 (Pa. 2018)).

Appellant argues that the evidence is insufficient to sustain his convictions under 18 Pa.C.S.A. §§ 2705 and 2902 because although Complainant was restrained with plastic ties and vulnerable, he was never at risk of suffering serious bodily injury. Appellant asserts that both perpetrators of the armed invasion and robbery refrained from striking Complainant, who was able to summon police immediately upon termination of the criminal incident. This argument fails because the testimony at trial and case precedent demonstrate that Appellant placed Complainant at risk of suffering serious bodily injury when he held him at gunpoint and sprayed him in one eye with mace.

Complainant testified that he was the victim of an armed invasion and robbery of his home at 419 North Front Street in Philadelphia. N.T. 10/5/2021, at 11-12. During this invasion, Complainant awoke to two men pointing guns to his head demanding that he give them his money. *Id.* The testimony provided by Brooklyn Bradley, another participant in the invasion and robbery, and Philadelphia Police Detective James Waring established that Appellant was one of these two men. *See id.* at 32-34, 98-123. Complainant testified that a gun was placed against head multiple times and that both men were carrying pistols which he "very comfortabl[y]" described as being real. *Id.* at 15-18. After Complainant refused to tell the men where some of his money was, they began counting down from five while holding a gun to Complainant's head. *Id.* at 13.

Complainant also stated that his hands were placed in tight restraints during the invasion, which left him with bruising on his left wrist and numbness in his right hand for approximately

16

six (6) weeks. *Id.* at 14-15. After the two men recovered money and other items from Complainant's home, Complainant was pushed to the ground and sprayed with mace in one of his eyes. *Id.* at 15-16. Ms. Bradley testified that Complainant's hands were tied and that the two men threatened to shoot Complainant to coerce him into opening the safe in his closet. *Id.* at 34-36. She also identified as Appellant as the one who sprayed Complainant in the eye with mace. *Id.* at 35.

Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence thus established that Appellant both held Complainant at gunpoint and sprayed him in the eye with mace during the armed invasion and robbery of Complainant's home. By holding Complainant at gunpoint, Appellant exposed him to inherently dangerous circumstances and placed him in danger of serious bodily injury. Additionally, when he deployed mace in Complainant's eye, Appellant utilized an instrument likely to cause serious bodily injury, thereby exposing him to the risk of serious bodily injury a second time. Both Complainant and Ms. Bradley testified that he was placed in restraints during the invasion and robbery.

The evidence was therefore sufficient to establish that Appellant recklessly placed Complainant in danger of serious bodily injury, thereby satisfying the elements for Recklessly Endangering Another Person under 18 Pa.C.S.A. § 2705. Additionally, the evidence was also sufficient to establish that Appellant restrained Complainant in circumstances which exposed him to risk of serious bodily injury, thereby satisfying the elements for Unlawful Restraint under 18 Pa.C.S.A. § 2902. As the Commonwealth satisfied all elements for both 18 Pa.C.S.A. §§ 2705 and 2902 beyond a reasonable doubt, Appellant's second sufficiency of the evidence claim is without merit and no relief is due.

## Conclusion

In summary, this Court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error and nothing to justify the granting of Appellant's request for relief. For the reasons set forth above, the judgment of the trial court should be affirmed.

By the Court:

4/28/22

Date

HONORABLE CHARLES A. EHRLICH